## TEXAS-OKLAHOMA PETROLEUM CO. v. OWENS.

No. 16208. Opinion Filed March 23, 1925.

Rehearing Denied June 21, 1927.

1. **Indians—Conveyance of Allotment by Heirs of Full-Blood—Validity of Oil Lease by Allottee Though not Approved by Secretary of the Interior Till After Deed by Heirs.**

Where C., a full-blood Creek citizen, executed an oil and gas lease upon his allotted land, which lease was filed in the office of the United States Indian agent, Union Agency, at Muskogee, and C. died before its approval by the Secretary of the Interior, and the heirs of C. thereafter conveyed said lands by deed duly approved by the county court, after which said lease was approved by the Secretary of the Interior; held, that the approval related back to the date of the lease, and the grantees in the deed by the heirs of C. take title subject to said lease.

2. **Equity—Scope of Relief.**

A court of equity, looking beyond the mere form of things to their substance, has power to decree such relief to the parties as appears just and right, and as best calculated to protect their rights, under the situation presented by the record.

3. **Same—Corporations—Validity of Assignment of Oil Lease by Equitable Owner of All Stock in Corporation.**

An assignment of an oil and gas lease contract, taken in the name of a corporation by one of its members, who is the equitable owner of all of the shares of stock and assets of such corporation, including the lease assigned, is sufficient to authorize a court of equity in upholding the assignment as against members of the corporation holding the legal title to certain shares of stock, which in fact belong to the assignor of said oil and gas lease.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by O. O. Owens against the Texas-Oklahoma Petroleum Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Christy Russell, Randolph, Haver & Shirk, and H. M. Gray, for plaintiff in error.

J. S. Severson and A. F. Moss, for defendant in error.

Opinion by JONES, C. This suit was instituted in the district court of Creek county, Okla., by the defendant in error, as plaintiff, against the plaintiff in error, as defendant, for the purpose of quieting plaintiff's title to certain real estate located in said county. The record discloses that the lands involved were the allotment of one Choelle, a full-blood Creek Indian, and on October 4, 1912, Choelle executed to the defendant, Texas-Oklahoma Petroleum Company, an oil and gas mining lease covering his allotment of land. The lease was on the regular departmental form and subject to approval of the Secretary of the Interior, and on October 7, 1912, said lease was filed in the office of the United States Indian Agent, Union Agency, Muskogee, Okla., for the purpose of securing the approval of the Secretary of the Interior. The lease was approved by the Secretary of Interior on January 19, 1924, about 12 years after its execution. Choelle departed this life in 1916, about four years after the execution of the lease and about eight years prior to its approval by the Secretary of the Interior.

In 1922, which was subsequent to the execution of the lease and prior to the approval of same by the Interior Department, the heirs of the allottee, Choelle, deceased, conveyed by deed their interest to the plaintiff, O. O. Owens, and said deed was duly approved by the county judge of Creek county, as required by law; and this suit, as heretofore stated, is brought by the plaintiff, Owens, for the purpose of setting aside and canceling the oil and gas lease in question, as a cloud upon the title. The plaintiff, Owens, contends that the deed under which he holds, executed by the heirs of Choelle and duly

approved by the county court, conveying to him all the right, title, and interest in and to said land, gives him the superior title, which is not subject to the oil and gas lease heretofore referred to. Upon the trial of the case to the court, without the intervention of a jury, the court held that by reason of the facts as heretofore stated the defendant—

"Texas-Oklahoma Petroleum Company, by virtue of such approval, became vested with no right whatsoever, and that said approval was absolutely null in so far as the rights of the plaintiff herein are concerned." (Referring to the lease in question and the approval thereof by the Secretary of the Interior on January 19, 1924, subsequent to the execution and approval of the deed relied upon by the plaintiff, Owens.)

This ruling of the court is by the appellant assigned as error, and the case of Scioto Oil Co. v. O'Hern, 67 Okla. 106, 169 Pac. 483, is cited in support of this contention. From an examination of the case, we find it to be identical in this particular with the instant case, and the law as announced by the court in the syllabus is as follows:

"Section 2, art. 25, Williams' Ann. Const., which extended all laws in force in Oklahoma Territory to the state of Oklahoma, including the laws regulating the recordation of instruments affecting the title to real estate, did not repeal Act of Cong. March 1, 1907, c. 2285, 34 Stat. 1015, which provided that the filing of any lease in the office of the United States Indian agent, Union Agency, Muskogee, Ind. T., shall be deemed constructive notice, but said act of March 1, 1907, survived, and an oil and gas lease filed in accordance therewith is effectual to impart notice to all persons subsequently dealing with the lands therein described.

"Where C., a full-blood Creek citizen, executed an oil and gas lease upon his allotted land, which lease was filed in the office of the United States Indian agent, Union Agency, at Muskogee, and C. died before its approval by the Secretary of the Interior, and the heirs of C. thereafter conveyed said lands by deed duly approved by the county court, after which said lease was approved by the Secretary of the Interior, held, that the approval related back to the date of the lease, and the grantees in the deeds by the heirs of C. take title subject to said lease."

The law of this case clearly determines the rights of the parties in the instant case, in so far as the validity of the oil and gas lease is concerned, and settles same in conformity to the contention of appellant. Numerous Oklahoma authorities will be found in the O'Hern Case clearly sustaining and upholding the opinion, and we therefore hold that the court was in error in holding that the oil and gas lease in question was not a valid subsisting lease.

If this were the only question involved in this case, we would readily conclude that the case should be reversed, and while various assignments of error are set forth, we deem it necessary to consider only one other, which we think is decisive of the rights of the parties in this case. In the trial of the case the court made the following findings:

"The court further finds that the equitable title to said oil and gas lease on the—day of March, 24, the date when negotiations were first begun tending to a sale to the rights under said lease, were vested in John W. Gilliland, notwithstanding the fact that said lease appeared on the books of said company as the property of defendant, Texas-Oklahoma Petroleum Company; that during the year of 1917, the said company was practically out of existence and all their assets were the lease involved in this action, together with one other lease, it having sold all its assets in the year of 1917 to the Southwest Oil Company; that the lease involved in this action was not at that time approved by the Department of Interior, and was not considered an asset of said company, and was therefore not transferred.

"That, subsequent to acquiring title of said lands from the heirs of Choelle, deceased, by the plaintiff herein, said Texas-Oklahoma Petroleum Company again renewed the application to have said lease approved through its acting equitable owners, John W. Gilliland and M. B. Flesher. * * *"

And further found that on—

"July 27, 1924, the said Texas-Oklahoma Petroleum Company, through said John W. Gilliland and M. B. Flesher and John B. Meserve, transferred all their interest to plaintiff, O. O. Owens, in so far as said lease is concerned."

From an examination of the record and consideration of the findings of the court, we conclude that John W. Gilliland and his associates named were found to be the equitable owners of all of the stock and assets of the Texas-Oklahoma Petroleum Company, appellant, and that, subsequent to the approval of the oil and gas lease in controversy, they had transferred all of their interest, which includes all the interest of the Texas-Oklahoma Company, appellant, to the plaintiff, Owens and that whatever rights they acquired by reason of the approval of the oil and gas lease were conveyed to the plaintiff. Counsel for appellant vigorously attack this finding of the court, and very earnestly urge the contention that the transfer of stock or assets of a corporation can only be effected by reason of a formal assignment of transfer of same by the legally constituted officers of the corporation. This, generally speaking, is the correct rule, but in this case,

from an examination of the record, we conclude that the findings of the trial court in this particular are sustained by the evidence. Gilliland testified very positively that he was the equitable owner of all the stock and assets of the corporation, appellant here. Counsel for appellant contend that the witness J. D. Boxley is the owner of a large amount of the stock, by reason of the fact that it is in his name. While upon the witness stand on the trial of the case Boxley testified as follows:

"Q. He left this assignment of your stock and assignments of the two leases for you to execute and you said to leave them there with Mr. West, that you would sign them; that you had no interest in this company or in these leases?

"A. Judge, at that time he and Ralph Welch were in a car together and drove up to my house; yes, I remember. All I want to do is to sell the thing. I haven't claimed any interest in the thing, understand. Understand, I am not claiming any interest in it. I would have had an interest in the lease if I had known that this was the lease you were fighting over because that was taken at the time I owned it. All I wanted to do was to get out from under the surety bonds. When I found out this suit was filed and Russell came down there with that contract, signed by Jackson, I executed it for my own protection.

"Q. For your own protection and upon no other theory at all?

"A. That is all. I didn't know this lease was in it.

"Q. You don't claim any interest in this lease or in this property?

"A. Well, no. I haven't set out any interest in it."

Further on in his testimony, when being asked as to whether or not he paid any consideration for any interest in the Texas-Oklahoma Petroleum Company, he answered, "I don't think so." And it is substantially admitted by the witness Boxley that he had no interest in the lease here in controversy at the time of the trial of this case, and we are inclined to the opinion that the evidence supports the finding of the court in this particular, and that same is supported by law. Section 5318, C. S. 1921, which governs the issue and transfer of stock in corporations, among other things, provides:

"That a transfer" of shares of stock "is not valid except between the parties thereto unless so entered upon the books of the corporation."

It is not contended that there was any valid transfer of the stock made on the books of the corporation in the said case, but hav-

ing concluded that the holding of the court, to the effect that John W. Gilliland was the equitable owner of all of the shares of stock and assets of the Texas-Oklahoma Petroleum Company, was sustained by the evidence, we think, under this provision of the law, that the judgment of the court was authorized. In the case of Collier v. Bartlett, 71 Okla. 133, 175 Pac. 247, this court held:

"Equity will not permit a mere form to conceal a real position and substantial rights of parties. It always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to conceal the true purpose, objects, and consequences of a transaction."

And in the case of Inman et al. v. Western National Bank of Fort Worth, Tex., 83 Okla. 126, 200 Pac. 714:

"A court of equity, looking beyond the mere form of things to their substance, has power to decree such relief to the parties as appears just and right, and as best calculated to protect their rights under the situation presented by the record."

And in the case of Bryne v. Dorey et al. (Mass.) 109 N. E. 146, the Supreme Judicial Court of Massachusetts announces the following rule:

"Where no superior rights of third persons have intervened, equity will deal with the real transaction and adjust the equities between the parties accordingly. * * * It being manifest that complete justice can be done and a circuity of action avoided, no sound reason appears why defendants should be compelled to resort to an independent suit on the notes."

Following the doctrine as announced in the above citations, the court in the exercise of its equitable powers was justified in finding in favor of the plaintiff and against the defendant on this issue. If, in fact, the Texas-Oklahoma Petroleum Company, a corporation, has no interest or equitable rights in the lease here involved, then it would be useless to hold that the mere fact that the lease was procured and approved in the name of the corporation, and because no formal assignment of same had been made by the corporation, would prevent the plaintiff, Owens, from relying upon the assignment executed to him by the equitable owners of all the shares and stock of the assets of the corporation; such a holding would be to follow the form rather than the substance of the law, and to so hold would be of no avail to the prevailing party. He had no rights in the subject-matter in controversy, and the judgment in his favor would vest him with

no beneficial right, hence it would be folly to sustain the contention made. There are other questions raised, but we deem the two which we have heretofore discussed dispose of all the material issues raised in the case, and from a careful consideration of same, we conclude that the conclusions reached and the results obtained by the judgment of the trial court are substantially correct, and the same should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 521 §93. (2) 21 C. J. p. 2034 §199; p. 661 845. (3) 21 C. J. p. 661 §845.